May please the court, Yakov Roth on behalf of the government. I'm hoping to reserve about four minutes for rebuttal this morning. Your honors, this case involves conditions on federal grants. The district court held that DOT and HUD did not have statutory authority to impose the set of conditions at issue here and that they were also arbitrary and capricious. That was wrong and we would ask the court to vacate the preliminary injunction. The conditions at issue fall into two categories and the first set require grantees to certify their compliance with federal anti-discrimination law. Those conditions are clearly authorized by Title VI of the Civil Rights Act, which specifically directs all federal agencies to effectuate Title VI's requirement that there not be discrimination in any federally funded program or activity. May I stop you there because this is a question of terminology. As I understood Title VI, it relates to enforcing the law with respect to particular grant programs. Your argument would expand that to say any programs. What is the textual basis for your argument? Your honor, you are correct. Title VI applies to any program or activity that receives federal funds. The regulations then define program or activity. They define it very, very broadly. So in practice, it sweeps quite broadly. But I think your honor is correct that the statutory authorization is for the federally funded programs or activities. As I understood their argument below and the district court's holding, it was not that the condition was overbroad because it went beyond federally funded programs or activities. The district court's holding was much more categorical and the injunction was much broader. It said you can't do this at all. Can we stop there? So in effect, you acknowledge that the statute talks about with respect to particular grant programs. But your challenge seems to go to everything here. Now I'm hearing you saying, well, at least the pro bono injunction should be scaled back. So what is your position in terms of the scope of the injunction? Our position is that the district court's injunction was too broad. I think the plaintiffs could have made a narrower challenge that was focused on the differential between the federally funded program or activity as defined by the regulation, Title VI regulations, and the entire, anything that the grantee does. And that would probably have been a stronger challenge if they had brought it. It's just not the argument they made and it's not the argument the district court adopted. But I think that would be open to them on remand. I just want to clarify, though, Your Honor. You think that argument to the district court? We invoked Title VI, but their argument to the district court was not this condition is overbroad because it goes beyond federally funded programs or activities. Their argument was you can't do this at all. And so we said, no, that's not correct. We can't do it. Title VI says we have to do it and we are doing it. This differential about, well, what about programs that the grantees operate that don't get any federal funds was never kind of the issue that the parties were fighting about. But I think Judge McKeown is right to say that there's a potential issue there. I think it's also a little bit unclear what the agencies intended on this because, you know, plaintiffs actually cite some language from one of the secretaries, I can't remember which, who said, you know, we have to make sure that federally funded programs aren't engaged in discrimination. So I think that may have been what they were trying to get at. And again, if that's the only issue, I don't think we have a problem with that being sorted out and narrowed. But the injunction as it stands means we can't do what Title VI requires us to do at all, which is a problem. But could you then talk about how this folds into the certification? Because as I read the certification requirement, the entities have to certify that they don't operate any programs that promote DEI, that violate federal anti-discrimination. So what's bothering me here is this any programs, and that kind of folds back into my initial question. So how does the certification interface here with the Title VI? So I think Title VI authorizes the agencies to ensure that federal grantees are not engaging in discrimination in any program or activity that receives federal funds. And that was the goal of this certification, was to effectuate that requirement. And it's really not different in substance than what agencies have done for decades and what plaintiffs acknowledge they've done for decades. Again, their argument from the beginning and their argument in this court has been, well, the problem is you aren't going to actually enforce civil rights laws as they stand. We think you're going to apply these conditions to prohibit lawful conduct. That kind of speculation about how we might misapply civil rights laws in the future is not a basis for saying we don't have statutory authority in the first place to enforce the civil rights laws. If there is a dispute, a concrete dispute over the substantive meaning of the civil rights laws, that can be litigated if it ever materializes. But it's not a basis to say that a condition that merely requires compliance with existing law is somehow invalid. Let me ask you this. Does, at the time of the application for the grant, when they first respond to the opportunity to apply and they submit their application, don't, isn't there a certification within that process? The certification, I'm not sure, Your Honor. I think that the notice of funding opportunity often identifies the conditions that will be included, and then they're actually written into a grant agreement that follows from the process of the application and the agency's decision of who to select. And complying with Title VI is not? Well, I mean, it is. That's what this is about. No, but I mean, before. It always was. Yeah, it always was. And the only thing that really changed was as to one of these two agencies, they're specifically calling out DEI programs that violate the federal civil rights laws as opposed to more generally. So that's been kind of, you know, identified more specifically as something the agency is looking at and focusing on, which was the, you know, one of the points of this. Say, you know, we think some of these programs have gone under the radar and have been sort of tacitly accepted, but no, if they violate the civil rights laws, it doesn't matter if you call it DEI. It's still illegal and we're paying attention to this. And this condition is designed to put them on notice that that's the agency's view and they're going to hold them to it. And again, there's nothing wrong with that under Title VI. That's what the agencies are supposed to do. This injunction prevents the agencies from doing it. So let me understand your argument. So as it currently stands, the two conditions in the HUD and DOT programs said that they certify that it does not operate any programs violating applicable federal anti-discrimination program laws. And you're suggesting that that might, as written, violate Title VI, but what would be appropriated if any program funded by Title VI does not violate any federal anti-discrimination law? Any program or activity that receives federal funds. That receives federal funds. Federal program or activity for purposes of Title VI, and your Honor can look at the regulations that define it, they're very broad terms. So it's not just, you know, we're giving you this money for this narrow, you know, subsidies for some bus fare or something. So it's that, only that strip that can't discriminate. The regulations sweep more broadly in sort of defining the scope of the program. Any federal funds. Where is that textually? Where do you find that? Because maybe that goes back to my first question, because the regulations also talk about specific grant programs, not all programs. And you indicated, well, that's true with Title VI, but now you suggest the regulations somehow have more particularity, but I didn't see that. So point me to where I'm either missing that or you're finding that. So Title VI, which is 42 U.S.C. 2000D, says no person in the United States shall on the ground of race, color, or national origin be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving federal financial assistance. And then the words program or activity are then defined by regulations to sort of set what is the scope of that? Like what are we looking at? What is the frame of reference for that? But then, but where are the regulations? Because they're talking about these programs, they're not in particular grant programs. So where in the regulations do you think it somehow narrows the scope of that? I don't think it narrows the scope. I'm not sure what, I'm not sure I understand the question. It doesn't narrow the scope. We can ensure that the grantees are not engaged in discrimination as to any program or activity that receives federal funds. And that's our position and that's what the condition is designed to do. I understand, so to your first question, to be well, the condition as written may sweep more broadly than that. And my response was yeah, and if that had been their argument, they might have been right. But that wasn't their argument. And that's, this is Did you make, did you make this argument in the district court that you're making now? We made the argument that Title VI I understand you made a big, broad Title VI, but you don't see the nuances of this being No, that's right, Your Honor. But that's, again, that's because that wasn't the nature of the challenge that the plaintiffs pursued. They didn't say it was an overbroad condition. They said, agencies can't do this. This is completely beyond their statutory authority. And that's what district court said, said you have no authority to put any new conditions on the grant. It's what, it's what Congress said in, you know, the, the HUD and D.O.T. specific statutes. Those are the only conditions. That's wrong. We are allowed under Title VI to put these conditions on and that's why we're asking the court to reverse that aspect of the injunction as overbroad. Now if I could turn to the second set of conditions, which are the HUD homelessness grant conditions and they're on the use of the grant funds. So these ones are different because they relate to the, specifically to the use of the grant funds by the grantee and not the grantee's conduct more generally. The statute here in subsection B-8 of the statute gives HUD express authority to impose terms and conditions for the efficient and effective implementation of the program. And that has to be true because Congress doesn't write these lengthy contracts on its own. Congress sets out the broad parameters and the agencies fill in the details using these terms and conditions. Now I want to be clear, they're not, this is not an unlimited power to put any condition that we want on federal funds. It has to be consistent with the statute. It has to be reasonably related to the efficient and effective execution of the program. And it has to advance the goals of the program. But these conditions do that. And they really do two things. Number one, they say don't use the federal funds in ways that would violate federal law. And number two, don't use, don't spend them on things that are not germane to the program. If you're spending it in ways that are going to violate federal law, that's undercutting the integrity of the program. Can you articulate that like in the context of like the promote elective abortions? Right. So that one has both aspects of this. The condition on abortion says don't fund or promote elective abortions. Well, funding elective abortions is illegal under the Hyde Amendment. So that's just implementing a pre-existing obligation they have. Promoting elective abortions is not prohibited by the Hyde Amendment, but it has nothing to do with homelessness. And that's actually something they say over and over again. They say, well, abortion doesn't, what does abortion have to do with homelessness? What does illegal immigration have to do with homelessness? That's our point. These things are not germane to the program. They are not advancing the goals of the program. So please don't spend this homelessness money on those things. It's not really clear to me why they think they could or ever were going to planning to spend the homelessness money on these things. But, you know, the conditions just make clear, don't spend it on things that have nothing to do with homelessness. It's hard for me. Yeah, I hear your point there. And maybe the parties are talking past each other here to some degree. But let's say with respect to homelessness, that you set up a facility or you have health facilities, either mental health or medical health that might help somebody after they had an abortion. So you haven't funded the abortion, but now somebody has mental health issues or medical issues. Would that be in violation of the State Amendment or the conditions? I don't think so. I don't think that would involve promoting abortion. I would say, Your Honor, part of the problem here is because we're doing this facially before these conditions were implemented, you know, we don't really have any record of how they will be applied. And the concrete disputes over meaning are somewhat premature and hypothetical, which makes it a little bit more challenging to have this discussion. But I think on the face of it, it's hard to say these conditions aren't related to the efficient or effective implementation of the program. So as long as the program meets the Hyde Amendment, then you don't have any objection. So the Hyde Amendment part is for funding the abortions and the grant funds are not supposed to be that the Hyde Amendment could not pay for. So that would be another way to like by counseling or we recommend, yeah, put up a billboard and in the, you know, it's a homeless shelter and we're going to put up a billboard that says, you know, abortion call. So, yeah, that and I think the view of the agency is that's not closely enough related to the goals of ending homelessness. We don't want to pay for that. And again, it's only this. These are limited to the use of the grant funds. So if these local jurisdictions want to promote abortion or promote illegal immigration or promote gender ideology using their own money, they're allowed to do that. These conditions are simply about how they can use the federal funds under these programs. And how are we supposed to define effective and efficient manner? Because that obviously could be up to dispute. You know, what's an effective use or what's an efficient use of the funding? Well, I mean, it's a, I think it's a deferential standard that we look at what did the agency do? Can they explain why this is reasonably related to those goals? And if yes, that that's something the agency should be empowered to do under the statute. Again, the plaintiff's position has been very categorical. So they've sort of said, well, you can't do any of this because this relates to policy. Well, there's nothing in the statute that says there can't be policy judgments embedded in determinations about efficiency and efficacy. Of course, if you're trying to figure out what's going to be effective, that's partially a policy question. Now, you can't contradict Congress's policy. Congress said you got to do it one way. The agency can't say no. But within the parameters that Congress has established, the agency does have some discretion in implementing and ensuring that the program runs properly. And then what about the argument that they have to use the SAVE verification system where they argue that that would be onerous and some of them don't have access to that? Right. So that's a good it's a good example. So the there's no dispute that under PERWORA, certain aliens are ineligible for certain public benefits, federally funded benefits. They don't dispute that. And so what we've said and that they have to do some verification of that. And so we've said, all right, well, the way you should do you should verify that is use the SAVE system, which we've made available for free to local jurisdictions because we we know it works. It's free. It's available. Use that one to comply with federal law and to ensure that the money we're giving you isn't being spent on people who are ineligible for it. I don't see how that could not be reasonably related to making the program efficient and effective. It's making sure the benefits go to the people who are eligible for the benefits. And again, their only argument was, oh, you know, this is going to be hard for us to pay for. It's free now. It wasn't always. But but as of April of last year, it was made free for local jurisdictions. You know, they also say there seems like you could ask them to spend some time and money to to get access to all those millions of dollars. Well, they have I mean, they have to they have an obligation to verify and they don't dispute they have an obligation to verify. I think they're just saying, well, we don't want to use your way of doing it. Well, why? It's free. It's available and it works. So the agency should be allowed to make that kind of determination as to how they comply with their legal obligations. How does that mesh then with the congressional requirement that the attorney general is supposed to set out verification standards via regulation? This is now this grant condition. So explain how that interfaces. Yeah. So the statute said that the attorney general was supposed to put out regulations to direct the states on how to establish verification regimes. And then once they gave states that direction, the states were given were supposed to get two years to build those those programs implementation. Those regulations never happened. This is from the 90s. Instead, there was an interim rule that sort of provided some baseline directives. And those are still in force because that's never been superseded by the regulations that were called for. But under that in that interim rule that went into effect in the 90s, they have to do some verification. They're supposed to do verification. And again, all we've done here is pointed them to a verification system that is available off the shelf for free that they can use. And so even if you view this as going beyond what Perora requires, and I guess it does go beyond what Perora requires, it's going beyond it in a way that makes the program run more efficiently and effectively, because again, it's going to work to ensure that the federal federally funded benefits go only to the people who are eligible for those benefits. And the agency's entitled to... So just to cut to the chase, it doesn't meet the statute. The regulations don't require this. This goes beyond what's required, but it's effective. Is that your position? Yeah, I think that's right, Your Honor. So the statute only requires verifying. The condition now tells them... Well, it doesn't just require verifying, it requires these regulations. I mean, you can't overlook congressional mandate. Sure, sure. The statute requires them to verify. The regulations require them to verify. The condition now tells them what system to use to verify. So it is going beyond, it is imposed, it's meaningful in saying, this is how we want you to do it. We want you to do it by using this free product that DHS has made available to you. I thought the condition allowed them to use an equivalent. Or equivalent. Or equivalent. Right. So if they don't want to use SAVE, they have to figure out another way that works. That's right. It could be an equivalent if we approve the equivalent. So it doesn't really go beyond the federal law because it's just saying you have to use some system to verify. It has to be an equivalent that is approved by the federal government. Oh, I see. Okay. So it gives them an option, but it's being more specific. But that is within the scope of the authority that was given to HUD to impose terms and conditions for the program to ensure that it's effective and efficient. Do you want to save some time? Yeah, I'll save the remaining time. Thank you, Your Honor. Good morning, Your Honors. Paul Lawrence for the local governments here. I think we all agree that Congress holds the spending power and they can set criteria and establish grant programs under the terms and conditions that they create. And what has happened here is that the Trump administration has added new conditions to these grant programs that have been going on for years. That were in the middle of process at the time these new conditions were added. To meet the Trump's administration's policies, all those are beyond anything that's been authorized by Congress or anything that is allowed by Title VI or anything that's allowed by PEORA. So on that basis, we have asked the court and asked this court to look at the grant programs that are particularly at issue and ask whether or not they include, reference, or encompass the grant conditions which the Trump administration is now seeking to impose that are beyond anything that was imposed before. The district court correctly held that they are not and therefore beyond the statutory authority of the agencies to enact and in violation of separations of powers and also that they were arbitrarily and capriciously adopted because there was no process or reasoning to explain why this change in the conditions that were being applied to the local governments at issue. So I want to start with I think one of the questions that you had and that my friend argued. What we're asking here is to look at the grant programs. We're not making suggestions that these are just over broad as to old programs. We have asked the court to look at these particular grant programs and decide whether or not these conditions are consistent with those grant conditions, grant programs as authorized by Congress. You mean the grant funds received by the public entities? The grant funds received by the public entities, I think I heard, which we agree that what these conditions are trying to apply to are the programs that are funded by the federal government. All these programs are funded in part by the federal government. I don't know this distinction that he's trying to make that if a local government has, you know, contributes money that they can then promote abortion with their money but they can't promote abortion with federal money. I don't understand the distinction. I think these conditions go to programs. Let's just take, so let's say there's a HUD grant that's made to a local entity and the local entity, local governmental entity, then provides some of that money to a non-profit to carry out the particulars.  Well, again, I... The condition applies? Is it your position that the condition applies and does the injunction extend to the non-profit? Yes. So in the HUD particular, because we have the continuum of care program and grants there, those are often carried out through agencies or through entities that the local governments work with and the injunction specifically does extend to protect those agencies from having to bear unconstitutional, what we believe are unconstitutional conditions in violation of the APA. Are you just referring to the local government or are you referring to the non-profits as  The way that the injunction reads, it would refer both to local government agencies. For example, King County has a regional homeless authority, which is an agency, but some other of the local governments do act with non-profits as carrying out some of these grant conditions. Okay. Thank you. Could you go back to the argument I think that the government is making that even if the government acknowledges the language of Title VI having some restrictions on programs, that the injunction goes too far. So, it is not really capturing just programs as you indicate, but it is everything and therefore it should be narrowed. Well, there are several problems we believe with what we have called the discrimination conditions. One of which is that they do on their face extend beyond simply this idea of spending particular federal dollars in a particular program. Secondly, they go beyond what Title VI says and requires. In talking about grant programs, it is important to understand that the courts have recognized these are like contracts so that we have to understand what these grant conditions mean. And I think I heard my friend acknowledge that the agencies were less than clear as to what these grant conditions mean. So, it is entirely appropriate for the district court to look at and your court to look at what did the agency say about the grant conditions when they were being issued. So, the first day that the HUD grant condition was issued, the secretary announced in a press release that these were to align with the Trump administration's effort to end DEI programs. That was reiterated two days later. That is not what the grant program says. That is not what the grant condition says. Well, what we perceive and we think is right that if you are looking at a grant condition and trying to understand what it says and trying to understand whether it falls within congressional authority, in this case and in all cases, contract principles apply to the grants. That is a challenge though. You are saying it is inappropriate in all respects. But you would concede if we were to limit the injunction so that it only says that instead of saying any program, it says any program that receives federal funding, that that would be consistent with Title VI, right? With a couple of caveats. Okay. First of all, it would have to include the caveat that under existing law as the courts have set forth. Where is that from? Well, even in the... Because that seems to be a challenge to how it is enforced, right? You are worried that they are going to enforce it in an over broad way. We all understand that under Supreme Court authority, grant conditions have to be clear as to what they mean and what they are telling the recipients of the grants to do. Well, is that condition based off of Title VI? If so, where? That is a general rule that the courts have applied to any conditions that are being set by the spending clause. In other words, if Congress through the spending clause is going to give you money and put conditions on it, they have to be clear about what they are doing in order to give the local government the opportunity to say, yes, I accept or no, I don't accept. So you are just asking that that would say that any existing federal anti-discrimination laws? As existing, as defined by the courts as of the date that you are signing. Because I think what the problem here is, again... So you are saying, could a state violate the law as long as a court hasn't found it as of today? No, I am not saying that. I don't understand how you could have that extra condition. Well, because, again, under contract principles that this court and other courts have used to understand conditions, the federal government has, the agencies have said, for example, Secretary Turner said that all DEI programs are presumptively invalid. But this just goes to enforcement and how it is enforced. This is a facial challenge. First of all, this is not a facial challenge. This is not a due process First Amendment case. This is an APA case. And the APA doesn't have that distinction one way or the other. It simply says, look at what the agency did and look at whether it is in their statutory authority or constitutional authority to do. So it is really a different case because you are looking at the particular grant programs and looking at the particular grant conditions. The other thing... So as a baseline then, when you get your grant and you maybe got the grant some years ago, it would be permissible to infer you can't violate Title VII, for example. Would that be fair? Yes. I think one thing that we are very concerned about, which you would have to address even if you were going to go down the path, is the materiality certification. And that is something new and different. In fact, my friend, in arguing the women's trades case last week, I believe it was, in the Seventh Circuit, acknowledged that what is going on here is, in addition to clarifying, is to give additional remedies under the False Claims Act. So you have the certification that you are agreeing that this is material, which is a high standard. The government is trying to put pressure on you and to enhance the ability to claim. You violated your certification under the False Claims Act by including that. And the False Claims Act has substantively different remedies than Title VI. So if you violate the False Claims Act, you would be subject to civil, perhaps criminal penalties and treble damages. If you violate Title VI, there's a whole process under Title VI where they come to you and say, you're violating Title VI. You have an opportunity to adjust your program to meet the requirements that the government says. If you do litigate it, there has to be a hearing. There has to be findings. You have an opportunity. And the conclusion of that is not of losing civil penalties, not paying treble damages. That certification is not conceding you're going to lose a FCA claim. It's just agreeing to a factual predicate, a narrow factual predicate. Well, it's not a narrow factual predicate. Materiality is a key thing there. And as I said, the government has, in other cases, acknowledged that this is trying to create remedies that might not otherwise exist under Title VI in order to enforce their view of what Title VI requires. So, again, if you are going to go down the road of saying existing law, then you have to get rid of the certification petition. Because here the government's telling you... Those are the two things that you want existing under existing laws interpreted by courts today and getting rid of the certification? That for the discrimination condition. I don't think that this has anything to do with the gender ideology or the immigration enforcement. Right. That's a separate class. That's a separate issue. Yes, because we do believe that what's happening here is that the government has announced interpretations of Title VI that are not consistent with court rules and they intend to enforce that in terms of the certification materiality requirements. So, yes, I think you have to deal with both rewriting, so to speak, the discrimination condition and getting rid of the materiality certification under the False Claims Act. So, I'm going to move on, I guess, to the question about the immigration, abortion, and gender ideology conditions. The government does not point to any provision of any of the grant programs that are at issue that have been authorized by Congress to talk about these issues. There's no reference to immigration, abortion, gender ideology in any of those programs. So, instead of referring to something specific in what Congress intended in terms of the program's goals, policies, and criteria, they are relying on this provision that falls into a category of additional conditions that the agencies can't apply that are really more in the nature of procedurally how do we make this program more efficient. They have nothing to do and don't suggest that they allow the government agencies to make policy decisions to apply those to the grant conditions. If you read that clause that way, the efficiency clause provisioned that way, you've basically totally undermined the ability of Congress to set conditions. Or you're saying that Congress gave this...  Because Congress can always disagree with any condition they impose. Well, first of all, these are significant conditions. And under the Loper-Bright line of cases, Congress doesn't just give broad discretion to make significant decisions to agencies. Congress is supposed to speak when they're doing that. So, to try to take an efficiency and effectiveness clause and use that as a loophole to impose policy conditions that Congress has not imposed that are unrelated to the program goals that Congress has imposed. If those policies do deal with efficiency, what's wrong with that? Well, because they don't have anything to do with what Congress says the goals are supposed to do. I don't think that they are actually intended to improve efficiency. They're intended to limit how funds are used in a way that Congress has not authorized. So, if the condition said that you can't use HUD funding to buy red balloons, that's substantive, right? And Congress didn't legislate on it. But it seemed to increase efficiency of homeless money. Like, not buying red balloons seems to be a waste of that money, correct? I think the government would have arguments. I mean, you could argue one way or another. The red balloons would try to give notice to people who come here to receive your homelessness services. But putting that aside, I think the problem is that that would be going too far to say that extends to something like the SAVE program. Let's talk about that. So, you're saying that they can't put a condition that you can't use HUD money to buy big red balloons? I think if they objected to big red balloons and the local government said, we're using big red balloons in order to make people aware this is where you go to get your homelessness services, I think that would be a perfectly legitimate use of red balloons and that would not be subject. So, a court can then impose – then we have to privilege the local government's belief of what's efficient over the federal government's, even though Title VI – I mean, even though the HUD statute says that the president can impose what's effective and efficient manner. Well, it said agencies. But putting that aside. Whatever, whatever. And these are not. Let's go to the two things. Let me go to the two things that he discussed. But what do you mean? The subject matter has to be provided by – No, it has to be within the goals and the way that Congress envisioned the program. And then they envisioned that it would be used in an effective and efficient manner as determined by the secretary. Well, here – again, I'd like to go to the specifics here. So, PEORA and the SAVE requirement. Congress actually set out exactly how to deal with the situation. They set out in PEORA that the secretary, DOJ, was supposed to go through and determine what is the proper way to verify. They could use SAVE, but to do so, Congress said you have to do it through a regulation. Well, that's not what the regulation says. The regulation does not require SAVE. And here the administration is saying, no, you have to require SAVE. So, we have a situation where – Let me just stop there because maybe I misheard the government, but I thought the government said or equivalent. Well, the PEORA specifically spoke to the SAVE program. And that's the problem here. The PEORA said you can adopt the SAVE program, but you have to do that by regulation. And instead of doing that, the government didn't adopt SAVE as a way to verify. So, what here, the agency is, again, overriding what Congress has told them to do, is that if you want to do this and require SAVE, there's a procedure to do that, but they haven't done that. So, they're trying to short-circuit that and override what Congress has said by using the SAVE program. But why couldn't the secretary just say I think it is an effective and efficient manner to use the SAVE program? Because Congress has told the government, has told all the agencies, here's how you go through a process of deciding that the SAVE program is an appropriate program. You didn't do that. Okay, but that's a separate statute. Here it says that the secretary can decide what's effective and efficient, and why couldn't the secretary deem the SAVE program an effective and efficient manner? Because the condition – you have to go back to the terms of the condition at issue here, specifically in reference to the PEORA program. So, the condition is adopting into its substance PEORA. That's what the condition says. I mean, that's a separate thing, though. You're not disagreeing, though, that a secretary could make the determination that using the SAVE system is effective and efficient. You're just saying that that's inconsistent with PEORA. Well, it is inconsistent with PEORA, and if there were no guidance, again, I don't – In the world where PEORA doesn't exist, in the world where PEORA doesn't exist, where there's a SAVE verification program that's free and available to the states, can the secretary then say that using the SAVE verification program is an effective and efficient manner, and therefore it's a condition of using this funding? Well, again, I don't – that hypothetical world doesn't exist because the requirement – I know it doesn't exist, but just tell me what the answer is. Even the requirement limiting use of the benefits to certain categories of immigrants and citizens comes out of PEORA. So, I don't understand how you – if PEORA did not exist, there wouldn't be a limitation on how these funds could be used. So, I don't know that how you can create a hypothetical where you've allowed the PEORA substance to apply but not PEORA as an entity. It's only because of PEORA that these funds are limited to certain categories of immigrants and to U.S. citizens. Well, you could still have PEORA, but not that sub-provision that requires the promulgation of regulation, couldn't you? You certainly could have – you could have PEORA without. The sub-provision does not exist. Well, let me go back to the government's argument – or I shouldn't say argument, but statement. The government acknowledged that this goes beyond what is required.  So, they said that, but they said it's also – it's free, useful, and effective. And then the government said, so, we now offer you this system, but you could use that system or the equivalent, which would then apparently go back to these interim rules because the regulations weren't adopted. Is there a problem with that where the government says, you can use this, but doesn't mandate it? No, it's the mandate – It's the mandating. Yes, because no one has alleged that the local governments are not using methods that are approved under the existing regulations to verify. So, yes, could the government say, or A, and I think local governments, no, you could use SAVE if you wanted to, but being mandated to is beyond what Congress has authorized. Something about SAVE that the local governments don't really care for? Well, first of all, I think the – originally, clearly it was a matter of money and clearly a matter of training and clearly a matter of availability. So in the middle of this process that was made free, it maybe changes that issue. I think there are also – and without getting into details that are beyond the scope, my general understanding that there are issues with the veracity of the information in the SAVE program. Obviously, it's been used in other instances. Sometimes it works. Sometimes it doesn't. But part of the reason – part of the reason that Congress did the system the way they did, I think, was that the government had to get SAVE into a situation where it was effective, to use your words, inefficient and accurate enough. Not Mrs. Words. Not mine. Sorry. And accurate enough to impose it, and we just haven't gotten to there. Well, that raises a point for me, though. So you say the states do use some sort of verification system, right? Yes. Is it an equivalent to SAVE? In the state's view, it's – sorry, in the local government's view, it is within the construct of what is permitted to be done under the regulation, whether it's equivalent to SAVE. To me, this gets to the problem of irreparable harm. Like, how is there any irreparable harm if the programs are using some sort of verification system? And this says you have to use SAVE or an equivalent. It sounds like you're doing that anyway. No, this is saying you have to use SAVE. No, I said SAVE or an equivalent verification system. Well, I think my understanding is that the government is going to say that these – why are they – again, we've got to step back. Why are these conditions being added if everything is operating consistently? It's a verification system. Well, if the existing verification system is working, they're trying to do something new here is the point. But my point is irreparable harm. If you're already doing it, what's the harm? Well, if we can do it the way we've been doing it, then there is no irreparable harm. If we have to go through a process – So what you would like, though, is to not be mandated to use SAVE. Exactly. And if you're using the provisions that were under interim regulations, you would deem that an equivalent. And then you might be in a catfight over whether it's equivalent or not. But as long as it's not mandated, that's your objective. Is that right? That is correct, Your Honor. But I just don't see what the irreparable harm – you know, this is on a stay. If you're doing it anyway and all it does is saying you have to do what you're doing, I just don't see the harm. Well, mandating something that Congress has specifically not authorized, which is the case here, is a violation of the separation of powers and a violation of exceeding statute of authority. Irreparable harm. No, well, it is. As this court has recognized, if you're being asked – It's the separation of powers. If you have a constitutional violation that you're being asked to do, then that's irreparable harm. Plus, in the American Trucking Association case, we have a very similar situation as to here in terms of you have an unconstitutional – what has been found more likely than not to be unconstitutional conditions, and you're under threat of being subject to fines, penalties, and lawsuits. In that case, it was by states. In the case of unlawful preemption, but it's that Hobson's choice that the local governments are facing, that they have to sign this, sign accepting the mandatory, sign accepting gender ideology, or be subject to action by the federal government. That's a Hobson's choice, which has also been held by this court in the American Trucking Association as irreparable injury. I have a similar question with the abortion funding. How much – do you know how much money the programs use to promote elective abortions? I don't even know what promote elective abortions means, which is part of the problem, is that these are vague terms, and nobody knows what that means. So it's not just my vision of it, and I think what our client's vision of it is, look, if somebody comes to us and needs shelter, their homelessness because they've been kicked out of their house by their husband because they're seeking an elective abortion, can we provide the housing for that person? Can we get that person, you know, getting the medical services that she has asked for and needs? And she will still be homeless after that because she's been kicked out of the house. So I don't know what promoting means. And that's closer to enforcement, though, not necessarily the front end. I'm just getting to the reputable harm factor. Again, I think you have to distinguish. These conditions are trying to do something new. They're not trying to just keep the status quo in place. If you're using, if you're violating Title VI, Title VI has a way to have that enforced. If you are not using funds for program purposes, the federal government, and I forget which statute, but there's a statute that says what the federal government can do in that circumstance. So this, I believe, clearly is trying to do something more than existing. It's trying to implement Trump's policies. And I see I'm at the end of my time, so I would ask respectfully, unless there are further questions, that you affirm the district court. I just have one last question. So it would seem, of course, that the counties and the entities have no objection to complying with the Hyde Amendment. It's just some added gloss on that that's undefined that poses a problem. Is that right? That is absolutely correct, Your Honor. Promoting is not a term used in the Hyde Amendment. I have one last question. What's the status of the case in the district court? It's awaiting this. There have been some subsequent actions where additional local governments have come on board, and there's been some expansion of the injunctions, but the basic issues haven't otherwise advanced awaiting this court's decision. Okay, thank you. Thank you, Counsel. Thank you, Your Honors. I'll start with materiality because I didn't address that in the opening and counsel focused on it. You know, the materiality provision as I see it is the government telling the grantees, you're on notice, we care about this. And it's hard for me to see how that is something the agencies don't have the power to do. It is not dispositive. Courts do not treat that as dispositive in a False Claims Act case, but it is relevant. What we don't want is for in the event that there is some False Claims Act case. If somebody agreed to materiality at the outset, it would be tough for them to backtrack. I think there are a lot of cases where courts say, well, yeah, you signed this. It says material, but here's this other evidence cutting the other way. We're not treating it as controlling. But it does provide something for us to push back if in the event of a case down the road, the local government says, oh, well, you know, everyone was doing this DEI stuff. We thought you were fine with it. Well, no, we actually called it out and we said we cared about it and we said it was material. But it's an additional condition, isn't it? It's sort of a condition in that it's in the document and it's saying to the grantees, we're telling you and you're on notice that this is material to our decision to pay these funds. And so that limits their ability later. Well, you have that enforcement ability. I mean, what you're trying to do is ratchet them into an acknowledgement up front, I guess. It's certainly designed to facilitate potential False Claims Act enforcement. If it turns out, I'm not hiding that. If it turns out that somebody was certifying knowingly that false certification that was made knowingly, that they were engaged in a program that does discriminate and they're certifying otherwise. Yes, we care about that and we're telling you up front. But without the certification, you still have that claim, right? That's right. Yes, that's right. So I did have a question, though. I wanted to clarify. This has to do with the verification. So as I heard you say, you don't have to use SAVE. We offer it up. It's now free. Somehow changed in the course of the litigation. Or it's equivalent. So is what is being done now on the interim rule, is that an equivalent? Right. So the condition says, must use SAVE or an equivalent verification system approved by the federal government. So I guess what they're saying now is that what they're doing consistent with the IFR counts as an equivalent verification system approved by the federal government. It's hard for me to weigh in on that because I don't have any idea what they're doing and that's not in the record. So the problem is, the problem is you're trying to impose this condition in effect. And if if you don't have if they're doing whatever they're doing, but they decide to use SAVE, there's no prohibition against that. But what you're doing is saying, you have to use SAVE or an equivalent, but we're not going to tell you if what you're doing under the current law is the equivalent. I just don't understand how you can put the entities in that position if you won't take a position. Yeah, well, I don't think it's been put to us. So again, this is all again, part of the problem is this is all coming up without any actual back and forth or attempts to enforce where we would say, oh, they took this position. We took that position. So it's hard for me to weigh in. I do think we could actually require SAVE and only SAVE because even if Perora only said the certain aliens are ineligible for public benefits, period. The secretary could then say, we want to make sure you are actually abiding by that. Here is a prophylactic measure to ensure that money isn't going to ineligible people. SAVE does it. We want you to use SAVE. I think it is perfectly within the secretary's authority to require SAVE alone. That's not what they've done. They've said, you know, we're opening the door to an equivalent that's approved by the federal government. And I understand that may not be fully fleshed out between the parties as to what that covers. But I think from the perspective of statutory authority, which is the claim that's been made here, the statute entitles the secretary to take steps to ensure that this is being followed. Thank you. I'm sorry, go ahead, Judge McKeown. No, that is a helpful explanation. Back to the False Claims Act, it does seem that this certification, for lack of better words, lowers the threshold for approving a False Claims Act, which to me does seem to be ratcheting up the penalties under Title VI. So that might be, you could construe that as going beyond Title VI. So the way I'm thinking about it is Title VI in not the 2000D but the next subsection, the 2000D-1, that says agencies are authorized and directed to effectuate the prohibition. I think this is a way of effectuating the prohibition because the prohibition is don't discriminate. This is effectuating it by saying if you do discriminate, we're going to have this additional tool to enforce against you. That's the way I think of it. And even under your argument now, it is overbroad because I think it says any program, not just the Title VI programs. Programs that receive federal financial assistance. So you'd still need to be narrowed.  Thank you. If there are no further questions, thank you, Your Honor. Thank you, counsel. This case is submitted and we are adjourned for today. All rise. Hear ye, hear ye. All persons having had business with the Honorable United States Court of Appeals for the Ninth Circuit will now depart for this court approved session now stands adjourned.
judges: McKEOWN, PAEZ, BUMATAY